UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

12 CIV 2121

-------------------------------------------------------x

GLENN FREEDMAN, Individually and On
Behalf of All Others Similarly Situated,

        Plaintiff,

        vs.

WEATHERFORD INTERNATIONAL
LTD., BERNARD J. DUROC-DANNER
and ANDREW P. BECNEL,

        Defendants.

-------------------------------------------------------x

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

Civil Action No:

CLASS ACTION COMPLAINT
FOR VIOLATION OF THE FEDERAL
SECURITIES LAWS

**JURY TRIAL DEMANDED**



RECEIVED

MAR 22 2012

U.S.D.C. S.D. N.Y.
CASHIERS

The allegations in this Complaint are based upon Plaintiff's personal knowledge as to Plaintiff's own acts, and are based upon information and belief as to all other matters alleged herein. Plaintiff's information and belief is based upon the investigation by Plaintiff's counsel into the facts and circumstances alleged herein, including, without limitation, a review and analysis of United States Securities and Exchange Commission ("SEC") filings by Weatherford International LTD. ("Weatherford" or the "Company"), as well as press releases, analyst reports, public statements, news articles and other publications disseminated by or concerning Weatherford and the other defendants named herein (together with Weatherford, the "Defendants"). Many additional facts supporting the allegations herein are known only to the Defendants and/or are within their exclusive custody or control. Plaintiff believes that additional evidentiary support for the allegations herein will emerge after a reasonable opportunity to conduct discovery.

## NATURE OF THE ACTION

1.      This is a federal class action on behalf of investors who purchased or otherwise acquired Weatherford common stock in the United States or on the New York Stock Exchange ("NYSE") between March 2, 2011 and February 21, 2012, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act"), and Rule 10b-5 promulgated thereunder.

2.      Weatherford provides equipment and services to oil and natural gas producing companies worldwide. The Company has common stock listed on the NYSE (under the ticker symbol "WFT").

3.      Prior to the start of the Class Period, Weatherford shocked the market by disclosing on March 1, 2011 that the Company had identified a material weakness in its internal

control over financial reporting of income taxes. This material weakness caused the Company to restate earnings from 2007 to 2010 by approximately $500 million.

4.     Subsequently, throughout the Class Period, Defendants created the illusion that the Company had shored up and corrected its accounting irregularities and that the restatement of financial information from 2007 to 2010 was complete and accurate.

5.     However, Defendants knew or recklessly failed to inform investors that (1) the Company did not properly restate its financial statements from 2007 to 2010; (2) the Company hastily issued its 2010 Form 10-K to give the market the impression that it remedied its material weakness in internal controls over financial reporting of income taxes from 2007 to 2010; and (3) the Company failed to properly document an additional $225 million in adjustments for financial statements from 2007 to 2010.

6.     As the truth regarding Weatherford started settling in, unsuspecting investors watched the price of Weatherford's common stock drop from a Class Period high of $23.41 per share to close at $15.36 on February 21, 2012, a decline of approximately 34%.

7.     Through this action, Plaintiff seeks to recover for himself and absent Class members the devastating losses that were suffered as a result of the Company's and its officers' fraud.

## JURISDICTION AND VENUE

8.     This action arises under Sections 10(b) and 20(a) of the Exchange Act of 1934, as amended, 15 U.S.C. §§ 78j(b) and 78(t), and SEC Rule 10b-5, 17 C.F.R. § 240.10b-5, promulgated thereunder.

9.     This Court has jurisdiction over the action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

10.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

11.     In connection with the acts alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

## THE PARTIES

12.     Plaintiff Glenn Freedman, as set forth in the accompanying certification and incorporated by reference herein, purchased Weatherford common stock at artificially inflated prices during the Class Period and has been damaged thereby.

13.     Defendant Weatherford International Ltd. is headquartered in Geneva, Switzerland and conducts its business through various affiliates located throughout the world. Specifically, Weatherford "is one of the largest global providers of products and services that span the drilling, evaluation, completion, production and intervention cycles of oil and natural gas wells."

14.     Defendant Bernard J. Duroc-Danner ("Duroc-Danner") is and was, at all relevant times, the Company's Chief Executive Officer, President and Chairman of the Board.

15.     Defendant Andrew P. Becnel ("Becnel") is and was, at all relevant times, the Company's Chief Financial Officer and Senior Vice President.

16.     Duroc-Danner and Becnel are referred to herein as the "Individual Defendants." The Individual Defendants, because of their position with the Company, had the authority to control and correct the contents of Weatherford's public disclosures to the market.

**CLASS ACTION ALLEGATIONS**

17.     Plaintiff brings this action pursuant to Rule 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of himself and a class (the "Class") consisting of all persons who purchased or otherwise acquired Weatherford common stock in the United States or on the NYSE during the Class Period at artificially inflated prices and who suffered damages as a result. Excluded from the Class are the Defendants named herein, members of their immediate families, any firm, trust, partnership, corporation, officer, director or other individual or entity in which a Defendant has a controlling interest or which is related to or affiliated with any of the Defendants, and the legal representatives, heirs, successors-in-interest or assigns of such excluded persons.

18.     Members of the Class are so numerous and geographically dispersed that joinder of all members is impracticable.  While the exact number of Class members remains unknown at this time, Plaintiff believes that there are hundreds of members of the Class.  Record owners and Class members can be identified from records maintained by Weatherford, or its transfer agent, and can be notified of the pendency of this action by mail and publication, using forms of notice similar to those customarily used in securities class actions.

19.     Plaintiff's claims are typical of the other members of the Class because Plaintiff and all of the Class members sustained damages that arose out of the Defendants' unlawful conduct complained of herein.

20.     Plaintiff will fairly and adequately protect the interests of the members of the Class, and Plaintiff has no interests that are contrary to, or in conflict with, the interests of the Class members that he seeks to represent.  Plaintiff has retained competent counsel experienced

in class action litigation under the federal securities laws to ensure such protection and intends to prosecute this action vigorously.

21.     A class action is superior to other methods for the fair and efficient adjudication of this controversy since joinder of all members of the Class is impracticable.  Furthermore, as the damages suffered by individual members of the Class may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually seek redress for wrongs done to them.  There will be no difficulty in the management of this action as a class action.

22.     The prosecution of separate actions by individual Class members would create a risk of inconsistent and varying adjudications, which could establish incompatible standards of conduct for Defendants.  Questions of law and fact common to members of the Class predominate over any questions that may affect only individual members, in that Defendants have acted on grounds generally applicable to the entire Class.  The questions of law and fact common to the Class include, but are not limited to, the following:

a.     whether Defendants' acts violated the federal securities laws as alleged herein;

b.     whether Defendants' publicly disseminated statements during the Class Period omitted and/or misrepresented material facts;

c.     whether Defendants acted with scienter in omitting and/or misrepresenting material facts;

d.     whether the price of Weatherford common stock was artificially inflated during the Class Period as a result of the material misrepresentations and omissions complained of herein;

e.     whether the Individual Defendants were controlling person as alleged herein; and

f.   whether members of the Class have sustained damages and,
if so, the proper measure of such damages.

## BACKGROUND

23.   On March 1, 2011, Weatherford issued a Form 12b-5 announcing, in part, the

following:

> The Company's Annual Report on Form 10-K (the "Form 10-K") for the year ended December 31, 2010 cannot be filed within the prescribed time period because the ***Company has identified a material weakness in internal controls over financial reporting for income taxes and requires additional time to perform additional testing on, and reconciliation, of the tax accounts to be included in the annual financial statements to be presented in the Form 10-K.*** The Company expects to file the Form 10-K on or before the 15th calendar day following the prescribed due date.
>
> . . . .
>
> As a result of identifying the material weakness, we performed additional testing to determine whether or not the material weakness failed to identify any material errors in our accounting for income taxes. ***We have substantially completed the testing procedures.*** Based on these procedures, we have identified certain errors, the correction of which will be adjustments to our historical financial statements and our 2010 fourth quarter earnings release, ***totaling approximately $500 million for the periods from 2007 to 2010***. The amount for each year is expected to range from $100 million to $150 million. Approximately $460 million of these adjustments relate to an error in determining the tax consequences of intercompany amounts over multiple years. . . .

24.   On this news, Weatherford's shares dropped $2.38, or approximately 10%, on

heavy trading volume.

## SUBSTANTIVE ALLEGATIONS DURING THE CLASS PERIOD

25.   The Class Period begins on March 2, 2011, when the Company held a conference

call to address for the market the "material weakness" in its income tax reporting.  Defendant

Becnel confirmed that the Company has "substantially completed the testing procedures and

ha[s] identified . . . errors . . . [that] totaled approximately $500 million for the periods from 2007

to 2010."

26.     On March 4, 2011, the SEC sent a letter to the Company requesting additional information on Weatherford's announced restatement and material weakness in its income tax reporting.

27.     On March 8, 2011, Weatherford filed its 2010 Form 10-K, which as a result of the Company's aforementioned material weakness in tax reporting, included the restatement of financial information for the years ended December 31, 2009, 2008, and 2007, the quarterly periods ended March 31, June 30, and September 30, 2010, and all four quarters of 2009.

28.     On March 11, 2011, the Company responded to SEC's March 4, 2011 request for additional information.  The letter stated, in part, the following:

> After **completion of our review**, the **final** adjustments . . . were determined to be approximately $462 million. . . .
>
> . . .
>
> As a result of our filing our Form 10-K, **we believe that our public disclosures have been corrected for the relevant full-year periods**.

29.     On April 21, 2011, Weatherford issued a press release announcing the Company's first quarter 2011 earnings.  For the quarter, the Company reported net income of $59 million, or $0.08 per diluted share.

30.     Thereafter, on May 10, 2011, Weatherford filed its SEC Form 10-Q for the quarter ended March 31, 2011 ("March 10-Q"), which reiterated the financial information in the April 21 press release.  In the Notes to Condensed Consolidated Financial Statements, the Company represented it had prepared the financial statements in accordance with U.S. generally accepted accounting principles ("GAAP").

31.     The March 10-Q recounted the steps that management had taken to remedy the material weakness that had caused the Company's earlier restatement, and announced that

management, including the Individual Defendants, had identified no change in the internal controls over financial reporting that occurred in the quarter that materially affected, or was reasonably likely to materially affect, internal controls over financial reporting.

32.     In the March 10-Q, the Individual Defendants certified that the financial information was in compliance with Sections 302 and 906 of the Sarbanes-Oxley Act of 2002, which in part provided that the March 10-Q did not contain any untrue statement, that the financial statements fairly presented the financial condition of Weatherford, and that internal controls were adequate.

33.     On July 26, 2011, Weatherford issued a press release announcing the Company's second quarter 2011 earnings. For the quarter, the Company reported net income of $110 million, or $0.15 per diluted share.

34.     Subsequently, on July 29, 2011, Weatherford filed its Form 10-Q for the quarter ended June 30, 2011 ("June 10-Q"), which reiterated the financial information disseminated in the July 26 press release. The June 10-Q represented it had been prepared in accordance with U.S. GAAP, and was again certified by the Individual Defendants, and that there had been no change in internal controls that materially affected the results.

35.     In the June 10-Q, the Company stated that it had acquired a business for $7 million and cash plus the issuance of 3.1 shares of Weatherford valued at $59 million.

36.     On October 25, 2011, Weatherford issued a press release announcing the Company's third quarter 2011 earnings. For the quarter, the Company reported record revenue of $3,373 million and net income of $190 million, or $0.25 per diluted share.

37.     Weatherford filed its Form 10-Q for the quarter ended September 30, 2011 on October 27, 2011 ("September 10-Q") which reiterated the financial information disseminated in

the October 25 press release.  As with the prior Forms 10-Q, it represented it had been prepared in accordance with U.S. GAAP, was certified by the Individual Defendants and stated that there had been no material change in internal controls that materially affected the reported results.

38.     The statements in ¶¶ 25, 27 – 37 were materially false and misleading because Defendants knew or recklessly failed to inform investors that (1) the Company did not properly restate its financial statements from 2007 to 2010, but instead had hastily issued the 2010 Form 10-K to give the market the impression that it remedied its material weakness in internal controls over financial reporting of income taxes from 2007 to 2010 while still failing to properly document an additional $225 million in adjustments for financial statements from 2007 to 2010; (2) that the weakness in internal controls had not been corrected as represented on March 1, but instead, had continued to impact financial reporting during the Class Period; (3) that Defendants had no idea of the magnitude of the tax issues for reporting periods in the Class Period; (4) that Defendants failed to comply with GAAP in the preparation of Weatherford's financial statements during the Class Period; and (5) that Defendants knew, or should have known, that internal controls were inadequate during the Class Period.

39.     As a result of the foregoing, Defendants' statements regarding the Company's financial performance, expected earnings and business prospects were false and misleading and lacked a reasonable basis when made.

## THE TRUTH EMERGES

40.     On February 21, 2012, Weatherford issued a press release announcing, in part, the following:

**Income Tax Matters**

The company is reporting results on a pre-tax basis due to the following factors:

9

- ***Management has concluded that the company has not remediated its previously disclosed material weakness in internal controls over financial reporting for income taxes relating to current taxes payable, certain deferred tax assets and liabilities, reserves for uncertain tax positions, and current and deferred income tax expense.***
- As a result of the continued material weakness over the accounting for income taxes, significant incremental work has been performed by Weatherford employees and external advisors during 2011 and early 2012, ***which management expects to result in roughly $225 million to $250 million of aggregate net adjustments to previously reported financial results for the years 2010 and prior relating to the correction of errors identified with respect to the company's accounting for income taxes***. Of this total amount, we currently estimate that roughly two-thirds is attributable to fiscal years ending on or prior to December 31, 2008, although management's analysis is not complete. None of the adjustments is expected to affect the company's historically reported net debt balances. Based upon additional analysis and other post-closing procedures designed to ensure that the company's consolidated financial statements will be presented in accordance with generally accepted accounting principles, the company believes the review of the company's historical tax accounts has been comprehensive and that the process undertaken has been thorough.

. . .

**Restatement**

As a result of the foregoing adjustments, the Audit Committee of our Board of Directors concluded, on February 20, 2012, ***that investors should no longer rely upon our previously issued financial statements***. The company expects to file the restated financial statements described below due to errors relating to the company's reporting of the provision for income taxes. The Audit Committee has discussed this matter with the Company's independent registered public accounting firm.

***Until the restatement is completed, the company's estimates of the expected adjustments for 2010 through 2008 and prior years, and the nine months ended September 30, 2011, as well as its expected financial results for 2011, are subject to change***. There can be no assurance that additional issues will not be identified during the course of the audit process and, therefore, these results should be considered preliminary until the company files its Form 10-K for the year ended December 31, 2011. Any changes to the preliminary, unaudited estimated results provided in this release, as well as additional items that may be identified during the completion of the audit process, could be material to the company's financial condition and results of operations for 2011 through 2008.

Management is continuing to assess the effect of the restatement on the company's internal control over financial reporting and its disclosure controls and procedures.

Management will report its conclusion on internal control over financial reporting and disclosure controls and procedures upon completion of the restatement process

41.     In a conference call held on the same day, Defendant Becnel admitted the following:

It has been about taxes and tax accounting, bad enough as it is, but this nothing more than the dismal event of last February, *except this one is a studious chapter*, if you will, one that has come through the process of understanding what we have.  And I think it's like progress, *because in the end we're reporting something that was wrong*.  We are also reporting things were wrong, but from a position of knowledge.  Knowledge now on the process and knowledge on the history of what we have.  *This goes back many, many years and its only taxes.*

42.     Weatherford stock did not trade on February 20, 2012.  However, on February 21, the stock price closed at $15.36 per share, from a close of $17.79 on February 17, representing a drop of approximately 13%, on heavy trading volume.

43.     On March 15, 2012, Weatherford filed its Form 10-K for the year ended December 31, 2011 ("10-K").  In the 10-K, Weatherford stated:

### Restatement of Interim Financial Statements

We have restated quarterly periods ended March 31, June 30 and September 30, 2011, and all four quarters of 2010 due to errors noted in the Company's recognition of current taxes payable, certain deferred tax assets and liabilities, reserves for unrecognized tax benefits and current and deferred income tax expense. In addition to the adjustments recorded to address our tax errors, we recorded other adjustments to correct previously identified immaterial errors affecting operating income. The following paragraphs update our Management's Discussion and Analysis for the interim periods ended March 31, June 30, and September 30 and the comparable prior year periods.

|  | 2011 Quarters | | | | |
| --- | --- | --- | --- | --- | --- |
|  | First | Second | Third | Fourth | Total |
|  | (In millions) | | | | |
| Income Tax Provision, as Reported | $ 19 | $ 46 | $ 82 | $ 221 | $ 368 |
| Adjustment | 27 | 30 | 61 | — | 118 |
| Restated | $ 46 | $ 76 | $ 143 | $ 221 | $ 486 |
|  | 2010 Quarters | | | | |
|  | First | Second | Third | Fourth | Total |
|  | (In millions) | | | | |
| Income Tax Provision, as Reported | $ 3 | $ 40 | $ 54 | $ 201 | $ 298 |
| Adjustment | 2 | 6 | 5 | 28 | 41 |

11

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Restated | $ | 5 | $ | 46 | $ | 59 | $ | 229 | $ 339 |

Restated results for 2011 include a reduction to net income attributable to Weatherford of approximately $22 million, $34 million and $60 million for the first, second and third quarters, respectively, primarily attributable to an increase in our tax expense related to an increase in reserves for unrecognized tax benefits and withholding taxes.

The $41 million correction of income tax expense in 2010 resulted from an additional $23 million of reserves for unrecognized tax benefits, $21 million in deferred tax adjustments for additional valuation allowances, offset by a benefit of $3 million in other net adjustments to our current and deferred tax accounts. The correction of these tax errors and the immaterial errors impacting operating income resulted in a reduction to net income of approximately $1 million, $6 million, $6 million and $28 million for the first, second, third and fourth quarters, respectively.

For the three months ended March 31, 2011, we had a tax provision of $46 million on income before taxes of $85 million. Our tax provision for the three months ended March 31, 2011 includes tax benefits of $6 million related to certain prior period expenses for which a benefit could not be recorded in the prior periods. For the three months ended March 31, 2010, we had a tax provision of $5 million on a pretax loss of $60 million that includes curtailment expense for our SERP for which no related tax benefit was recorded. Our tax provision for the three months ended March 31, 2010 includes the tax impact of changes in our geographic earnings mix, which is partially offset by a tax benefit related to the devaluation of the Venezuelan bolivar.

For the three and six months ended June 30, 2011, we had a tax provision of $76 million and $122 million on income before taxes of $156 million and $241 million, respectively. Our tax provision for the three and six months ended June 30, 2011 includes discrete tax benefits of $22 million and $28 million, respectively which includes benefits related to certain prior period expenses for which a benefit could not be recorded in prior periods and reductions in the tax provisions of certain jurisdictions that were recorded in prior periods.

For the three months ended June 30, 2010, we had a tax provision of $46 million on a pretax loss of $5 million that includes an $82 million loss on the fair value adjustment to the put option issued in connection with the OFS acquisition for which no tax benefit has been recorded. For the six months ended June 30, 2010, we had a tax provision of $51 million on a pretax loss of $65 million that includes the loss related to the put option issued in connection with the OFS acquisition and curtailment expense on our SERP for which no related tax benefit was recorded. Our tax provision for the six months ended June 30, 2010 also includes the tax impact of changes in our geographic earnings mix, partially offset by a tax benefit related to the devaluation of the Venezuelan bolivar.

For the three and nine months ended September 30, 2011, we had a tax provision of $143 million and $265 million on income before taxes of $276 million and $517 million, respectively. Our tax provision for the three and nine months ended September 30, 2011 includes discrete tax benefits of $11 million and $39 million, respectively, which includes benefits related to certain prior period expenses for which a benefit could not be recorded in prior periods, reductions in the

tax provisions of certain jurisdictions that were recorded in prior periods and the resolution of previously unrecognized tax benefits.

For the three months ended September 30, 2010, we had a tax provision of $59 million on income before taxes of $153 million. Our income before taxes for the three months ended September 30, 2010 includes a $90 million gain on the fair value adjustment to the put option issued in connection of the OFS acquisition for which no tax expense was recorded. For the nine months ended September 30, 2010, we had a provision of $110 million on income before taxes of $88 million that includes curtailment expense on our SERP for which no related tax benefit was recorded. Our tax provision for the nine months ended September 30, 2010 includes the tax impact of changes in our geographic earnings mix, which is partially offset by a tax benefit related to the devaluation of the Venezuelan bolivar.

## LOSS CAUSATION

44.     At all relevant times, Weatherford's stock was traded on the NYSE.  As described above, Defendants' material misrepresentations and omissions had the effect of creating and maintaining an artificially inflated price for Weatherford's stock.  Those misrepresentations and omissions that were not immediately followed by an upward movement in the Company's stock price served to maintain the share price at artificially inflated levels by maintaining and supporting a false positive perception of Weatherford's business, operations, performance and prospects.

45.     Defendants had a duty to promptly disseminate accurate and truthful information with respect to the Company's financial and operational condition or to cause and direct that such information be disseminated, and to promptly correct any previously disseminated information that was materially misleading to the market.  As a result of their failure to do so, the price of Weatherford common stock was artificially inflated during the Class Period, directly causing Plaintiff and the Class to suffer damages when the truth eventually emerged.

46.     Defendants' false and misleading statements and omissions in their SEC filings and other public statements during the Class Period directly caused losses to Plaintiff and the

Class.  On the strength of these false statements, the Company's stock price was artificially inflated to a Class Period high of $23.41 per share on April 1, 2011.

47.     As the truth began to emerge regarding the true financial condition of Weatherford, the price of Weatherford stock declined as the market processed each set of previously undisclosed facts.  Each such disclosure removed a portion of the artificial inflation in the price of Weatherford's common stock and directly caused Plaintiff and other Class members to suffer damages.  On February 21, 2012, Weatherford's common stock had declined to a close of $15.36 per share – a decline of approximately 34% per share from its Class Period high.

48.     Until shortly before Plaintiff filed this Complaint, he was unaware of the facts alleged herein and could not have reasonably discovered the Defendants' misrepresentations and omissions by the exercise of reasonable diligence.

### APPLICABILITY OF THE FRAUD ON THE MARKET DOCTRINE

49.     At all relevant times, the market for Weatherford's common stock was an efficient market for the following reasons, among others:

   a.   Weatherford's common stock was listed and actively traded on the NYSE, a highly efficient national market;

   b.   As a registered and regulated issuer of securities, Weatherford filed periodic reports with the SEC, in addition to the frequent voluntary dissemination of information;

   c.   Weatherford regularly communicated with public investors through established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures such as communications with the financial press and other similar reporting services;

   d.   Weatherford was followed by multiple analysts, which followed Weatherford's business and wrote reports which were publicly available and affected the public marketplace;

e. The material misrepresentations and omissions alleged herein would tend to induce a reasonable investor to misjudge the value of Weatherford's stock; and

f. Without knowledge of the misrepresented or omitted facts, Plaintiff and other members of the Class purchased or otherwise acquired Weatherford stock between the time the Defendants made the material misrepresentations and omissions and the time that the truth was revealed, during which time the price of Weatherford stock was artificially inflated by Defendants' misrepresentations and omissions.

50. As a result of the above, the market for Weatherford common stock promptly digested current information with respect to the Company from all publicly available sources and reflected such information in the security's price. Under these circumstances, all purchasers of Weatherford common stock during the Class Period suffered similar injuries through their purchases of shares at prices which were artificially inflated by the Defendants' misrepresentations and omissions. Thus, a presumption of reliance applies.

**NO SAFE HARBOR**

51. The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made and/or were statements of historical fact. To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements were made, the particular speaker knew that the particular forward-looking statement was false, and/or the

forward-looking statement was authorized and/or approved by an executive officer of Weatherford who knew that those statements were false when made.

### FIRST CAUSE OF ACTION
#### (Violation of Section 10(b) and Rule 10b-5)

52.     Plaintiff realleges each allegation above as if fully set forth herein.

53.     This claim is brought under Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b) and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5, against Weatherford and the Individual Defendants (the "Section 10(b) Defendants").  The Section 10(b) Defendants (1) employed devices, schemes and artifices to defraud; (2) made untrue statements of material act and/or omitted material facts necessary to make the statements made not misleading; and (3) engaged in acts, practices and a course of business which operated as a fraud and deceit upon Plaintiff, in violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

54.     The Section 10(b) Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or the mails, engaged and participated in a continuous course of conduct to conceal non-public, adverse material information about the Company's financial condition as reflected in the misrepresentations and omissions set forth above.

55.     The Section 10(b) Defendants each had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth by failing to ascertain and to disclose such facts even though such facts were available to them, or deliberately refrained from taking steps necessary to discover whether the material facts were false or misleading.

56.     As a result of the Section 10(b) Defendants' dissemination of materially false and misleading information and their failure to disclose material facts, Plaintiff was misled into believing that the Company's financial statements were true, accurate, and complete.

57.     Plaintiff purchased Weatherford common stock without knowing that the Section 10(b) Defendants had misstated or omitted material facts about the Company's financial performance or prospects.  In purchasing the stock, Plaintiff relief directly or indirectly on false and misleading statements made by the Section 10(b) Defendants, and/or an absence of material adverse information that was known to Section 10(b) Defendants or recklessly disregarded by them but not disclosed in the Section 10(b) Defendants' public statements.  Plaintiff was damaged as a result of his reliance on the Section 10(b) Defendants' false statements and misrepresentations and omissions of material facts.

58.     At the time of the Section 10(b) Defendants' false statements, misrepresentations and omissions, Plaintiff was ignorant of their falsity and believed them to be true.  Plaintiff would not otherwise have purchased or acquired Weatherford stock had he known the truth about the matters discussed above.

59.     Plaintiff is filing this action within two years after discovery of the facts constituting the violation, including facts establishing scienter and other elements of Plaintiff's claim, and within five years after the violations with respect to Plaintiff's investments.

60.     By virtue of the foregoing, the Section 10(b) Defendants have violated § 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

61.     As a direct and proximate result of the Section 10(b) Defendants' wrongful conduct, Plaintiff has suffered damages in connection with the purchase of Weatherford stock.

## SECOND CAUSE OF ACTION
### (Violation of Section 20(a) of the Exchange Act)

62.     Plaintiff realleges each allegation above as if fully set forth herein.

63.     Each of the Indivdiual Defendants, by reason of their status as senior executive officers and directors of Weatherford, directly or indirectly, controlled the conduct of the Company's business and its representations to Plaintiff, within the meaning of § 20(a) of the Exchange Act (the "Section 20(a) Defendants").  The Section 20(a) Defendants directly or indirectly controlled the content of the Company's SEC statements and press releases related to Plaintiff's investments in Weatherford common stock within the meaning of § 20(a) of the Exchange Act.  Therefore, the Section 20(a) Defendants are jointly and severally liable for the Company's fraud, as alleged herein.

64.     The Section 20(a) Defendants controlled and had the authority to control the content of the Company's SEC statements and press releases.  Because of their close involvement in the everyday activities of the Company, and because of their wide-ranging supervisory authority, the Section 20(a) Defendants reviewed or had the opportunity to review these documents prior to their issuance, or could have prevented their issuance or caused them to be corrected.

65.     The Section 20(a) Defendants knew or recklessly disregarded the fact that Weatherford's representations were materially false and misleading and/or omitted material facts when made.  In so doing, the Section 20(a) Defendants did not act in good faith.

66.     By virtue of their high-level positions and their participation in and awareness of Weatherford's operations and public statements, the Section 20(a) Defendants were able to and did influence and control Weatherford's decision-making, including controlling the content and

dissemination of the documents that Plaintiff contends contained materially false and misleading information and on which Plaintiff relied.

67.     The Section 20(a) Defendants had the power to control or influence the statements made giving rise to the securities violations alleged herein, and as set forth more fully above.

68.     As set forth above, the Section 10(b) Defendants each violated § 10(b) of the Exchange Act and Rule 10b-5, thereunder, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, the Section 20(a) Defendants are also liable pursuant to § 20(a) of the Exchange Act.

69.     As a direct and proximate result of the Section 20(a) Defendants' wrongful conduct, Plaintiff suffered damages in connection with his purchases of Weatherford stock.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff on behalf of himself and the Class, prays for relief and judgment including:

A.     Determining that Counts I and II of this action is a proper class action under Federal Rules of Civil Procedure 23, certifying Plaintiff as a Class representative under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff's counsel as Lead Counsel;

B.     Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be determined at trial, including pre-judgment and post-judgment interest, as allowed by law;

C.     Awarding extraordinary, equitable and/or injunctive relief as permitted by law (including, but not limited to, rescission);

D.      Awarding Plaintiff and the Class their costs and expenses incurred in this action, including reasonable counsel fees and expert fees; and

E.      Awarding such other and further relief as may be just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury on all triable claims.

Dated:  New York, New York
          March 22, 2012

FARUQI & FARUQI LLP

Richard W. Gonnello
Francis P. McConville
369 Lexington Avenue, 10th Floor
New York, NY 10017
Tel: (212) 983-9330
Fax: (212) 983-9331
E-mail: rgonnello@faruqilaw.com
          fmcconville@faruqilaw.com

-and-

Emily C. Komlossy
3595 Sheridan Street, Suite 206
Hollywood, Florida 33021
Tel: 954-239-0280
Fax: 954-239-0281
Email: ekomlossy@faruqilaw.com

*Counsel for Plaintiff Glenn Freedman*

## CERTIFICATION OF PROPOSED LEAD PLAINTIFF

I, Glenn Freedman ("Plaintiff"), declare, as to the claims asserted under the federal securities laws, that:

1.    Plaintiff has reviewed a draft complaint against Weatherford International LTD (WFT) and has authorized the filing of a complaint substantially similar to the one I reviewed.

2.    Plaintiff selects Faruqi & Faruqi, LLP and any firm with which it affiliates for the purpose of prosecuting this action as my counsel for purposes of prosecuting my claim against defendants.

3.    Plaintiff did not purchase the security that is the subject of the complaint at the direction of Plaintiff's counsel or in order to participate in any private action arising under the federal securities laws.

4.    Plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

5.    Plaintiff's transactions in Weatherford International LTD (WFT) securities that are the subject of the complaint during the class period specified in the complaint are set forth in the chart attached hereto.

6.    In the past three years, Plaintiff has not sought to serve nor has served as a representative party on behalf of a class in an action filed under the federal securities laws, except as specified below:

7.    Plaintiff will not accept any payment for serving as a representative party on behalf of a class beyond plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class as ordered or approved by the Court.

I declare under penalty of perjury under the laws of the United States that the foregoing information is correct to the best of my knowledge.

Signed this ____ day of _____, 2012.

_____
Glenn Freedman

| Transaction (Purchase or Sale) | Trade Date | Price Per Share | Quantity |
|---|---|---|---|
| Purchase | 2/13/2012 | $17.90 | 2,000 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |