```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -:
GLENN FREEDMAN, Individually and   : 12 Civ. 2121 (LAK) (JCF)
On Behalf of All Others Similarly  :
Situated,                          :           MEMORANDUM
                                   :           AND ORDER
                                   :
            Plaintiff,             :
                                   :
      - against -                  :
                                   :
WEATHERFORD INTERNATIONAL LTD.,    :
BERNARD J. DUROC-DANNER, and ANDREW:
P. BECNEL,                         :
                                   :
            Defendants.            :
- - - - - - - - - - - - - - - - - -:
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE
```

The plaintiffs in this putative class action are investors who contend that Weatherford International Ltd. ("Weatherford") and certain of its officers made false and misleading statements in violation of the federal securities laws. At issue here are three motions submitted by the plaintiffs, seeking to compel the defendants to produce certain reports comparing the electronic search results from discovery in this action to the results from prior searches (Docket no. 65), to produce documents concerning an investigation undertaken by Weatherford's Audit Committee (Docket no. 66), and to produce documents concerning an investigation undertaken by the law firm Latham & Watkins, LLP (Docket no. 67). For the following reasons, the plaintiffs' motions are denied.

1

Background

The full factual background of this litigation has been described in prior opinions in this case as well as in decisions in a related case in this district.  See Freedman v. Weatherford International Ltd., No. 12 Civ. 2121, 2013 WL 5299137 (S.D.N.Y. Sept. 20, 2013); Dobina v. Weatherford International, Ltd., 909 F. Supp. 2d 228 (S.D.N.Y. 2012).  In brief, the plaintiffs allege that Weatherford engaged in securities fraud by issuing false earnings statements between 2007 and 2010.  The claims in this action focus on a series of restatements intended to correct errors in the 2007-2010 earnings statements; the plaintiffs allege that Weatherford continued to fraudulently understate its tax expenses in three separate restatements, announced in March 2011, February 2012, and July 2012.  Freedman, 2013 WL 5299137, at *1-4.

The events at issue here were set in motion by a February 2012 phone call placed by a senior employee in the Weatherford Tax department to Weatherford's whistleblower hotline.  (Memorandum and Order dated Nov. 5, 2013, Dobina v. Weatherford, No. 11 Civ. 1646 (S.D.N.Y. Nov. 5, 2013) ("Nov. 5 Order") at 2-3; Plaintiffs' Motion to Compel the Production of Documents Concerning the Latham Investigation ("Pl. Latham Memo.") at 1-2).  That employee reported that the head of Weatherford's Tax department had engaged in a number of improper practices.  In response, Weatherford hired

2

Latham & Watkins ("Latham") to conduct an independent review (the "Latham Investigation"). (Defendants' Opposition to Lead Plaintiffs' Motion to Compel Documents Concerning the Latham Investigation ("Def. Latham Memo.") at 1; Pl. Latham Memo. at 1). Latham's review found no evidence of intentional misconduct, and it reported this to Weatherford's auditors, Ernst & Young LLP ("E&Y"). (Pl. Latham Memo. at 1). "The [Latham] Investigation culminated in a meeting in March 2012 between Latham attorneys and SEC personnel at which the investigation's findings were communicated." (Nov. 5 Order at 3). E&Y subsequently issued a clean audit opinion (Pl. Latham Memo. at 1), and Weatherford issued a second restatement on March 15, 2012 (Consolidated Amended Class Action Complaint ("Am. Compl."), ¶ 8). Several months later, in July 2012, Weatherford announced that it would issue a third restatement. (Am. Compl., ¶ 12).

A second investigation ensued, headed by Davis Polk & Wardwell, LLP (the "Audit Committee" investigation). (Nov. 5 Order at 3-4). The plaintiffs allege that in August 2012, Latham admitted to E&Y that it had known of intentional fraud at Weatherford despite its official conclusion to the contrary. (Pl. Latham Memo. at 1). The plaintiffs base their allegations on the statements of a Weatherford employee, who had indicated to both Weatherford and Latham that he had made a series of intentional

adjustments to income tax calculations during 2007 to 2010 in order to reach a particular effective tax rate.  (Pl. Latham Memo. at 1-2; Def. Latham Memo. at 3).

The discovery of documents associated with these investigations was already litigated in <u>Dobina</u>, a related, ongoing case dealing with Weatherford's statements from 2007 through 2010. There, the plaintiffs sought to compel production of all documents relating to the Latham and Audit Committee investigations.  (Nov. 5 Order at 20-22); <u>see also</u> <u>In re Weatherford International Securities Litigation</u>, No. 11 Civ. 1646, 2013 WL 6628964 (S.D.N.Y. Dec. 16, 2013) (clarifying scope of documents to be produced).  I ruled that both attorney-client privilege and work product protection had been waived for any material physically or orally disclosed to the SEC, as well as any underlying factual material explicitly referenced therein.  (Nov. 5 Order at 20, 22).  In accordance with that order, the defendants have produced those documents to the plaintiffs both in <u>Dobina</u> and in this action.

<u>Discussion</u>

  A. <u>Production of Results of Electronic Document Searches</u>

The plaintiffs first seek the production of certain reports comparing the results of the defendants' document search and productions in this case with (1) the search terms proposed by the plaintiff; (2) the searches and productions related to the Audit

4

Committee's investigation of the restatements; and (3) the searches and productions related to Latham's investigation of the restatements. (Plaintiffs' Motion to Compel Defendants to Produce the Results of Electronic Document Searches ("Pl. E-reports Memo.") at 1-2). The defendants categorically object to the plaintiffs' request, arguing that there is no legal basis for demanding documents not in their possession and that creating the reports would be hugely burdensome.

As of April 2012, the defendants had provided the search terms used in the related Dobina litigation, as well as those used in the Latham and Audit Committee investigations. (Pl. E-reports Memo. at 1-2). The plaintiffs allege, however, that without the requested reports they have no way of measuring the adequacy of the defendants' searches and productions in this case. (Pl. E-reports Memo. at 1). In April 2014, the plaintiffs asked the defendants to run the comparison reports according to technical specifications provided by a retained e-discovery expert. (Pl. E-reports Memo. at 2). The defendants created a sample report by running the plaintiffs' proposed search terms on a limited set of custodians. (Pl. E-reports Memo. at 3; Defendants' Opposition to Plaintiffs' Motion to Compel Reports on Electronic Document Searches ("Def. E-reports Memo.") at 2). This sample report, prepared in conjunction with an e-discovery vendor and a separate expert retained by the

5

defendants, took several weeks, over 250 hours of vendor time, and 750 hours of computer processing time. (Def. E-reports Memo. at 2; Declaration of Sergio Riquelme dated May 30, 2014, ¶¶ 4-6). Otherwise, the defendants have not created the reports as requested, as "the task proved extremely burdensome and technically infeasible." (Def. E-reports Memo. at 2 n.3).

The plaintiffs' request is outside the bounds of Rule 26 of the Federal Rules of Civil Procedure. While parties may "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense," Fed. R. Civ. P. 26(b), the requested reports do not meet this standard. The burden of demonstrating relevance is on the party seeking discovery. Trilegiant Corp. v. Sitel Corp., 272 F.R.D. 360, 363 (S.D.N.Y. 2010); Mandell v. Maxon Co., No. 06 Civ. 460, 2007 WL 3022552, at *1 (S.D.N.Y. Oct. 16, 2007). Here, in essence, the plaintiffs seek discovery on discovery, on the asserted basis that they are "entitled to test the reasonableness and adequacy of [the] [d]efendants' production." (Pl. E-reports Memo. at 3).

There are circumstances where such collateral discovery is warranted. Here, however, the plaintiffs have not proffered an adequate factual basis for their belief that the current production is deficient. Their contention that the defendants' production is deficient because 85% of the pages produced relate to Dobina,

despite the different class periods and false statements at issue here (Pl. E-reports Memo. at 2), is too conclusory to provide that basis. Furthermore, the use of "dramatically different" search terms in this action as compared to those utilized in either the investigations or the Dobina action (Pl. E-reports Memo. at 2), is not surprising in light of the differing class periods and varying false statements. Given the absence of a legal basis for the plaintiffs' request, the motion is denied.

    B. Audit Committee Investigation

In accordance with my orders in Dobina, the defendants have produced to the plaintiffs here all documents actually disclosed to the SEC, as well as all factual materials explicitly referenced in those disclosures. The plaintiffs now seek all remaining documents withheld on the basis of attorney client privilege and work product protection, arguing that the defendants waived all privilege and protection over subject matter related to the investigation as a result of Weatherford's "comprehensive and one-sided disclosure" to the SEC. (Plaintiffs' Motion to Compel the Production of Documents Concerning the Audit Committee Investigation ("Pl. Audit Memo.") at 1). The plaintiffs clarify that they do not seek opinion work product, but rather the all fact-based portions of interview notes, memoranda, attorney e-mails, and other investigative materials, "regardless of whether they were produced to the SEC."

(Plaintiffs' Omnibus Reply to Defendants' Oppositions to Plaintiffs' Motions to Compel (1) Reports on Electronic Documents Searches, (2) the Production of Documents Concerning the Audit Committee Investigation, and (3) the Production of Documents Concerning the Latham Investigation ("Reply") at 1-2).

Subject matter waiver is reserved for the rare case where a party either places privileged information affirmatively at issue, or attempts to use privileged information as both a sword and a shield in litigation. Favors v. Cuomo, 285 F.R.D. 187, 198-99 (E.D.N.Y. 2012); Shinnecock Indian Nation v. Kempthorne, 652 F. Supp. 2d 345, 365-66 (E.D.N.Y. 2009) (collecting cases). Both attorney-client privilege and work product protection may be waived on a subject-matter basis. See Favors, 285 F.R.D. at 200. Subject matter waiver is justified "when a party uses an assertion of fact to influence the decisionmaker while denying its adversary access to privileged materials potentially capable of rebutting the assertion." In re County of Erie, 546 F.3d 222, 229 (2d Cir. 2008) (internal quotation marks omitted). This is necessary in order to "avoid prejudice to the adversary party and 'distortion of the judicial process' that may result from selective disclosure." Robbins & Myers, Inc. v. J.M. Huber Corp., 274 F.R.D. 63, 94-95 (W.D.N.Y. 2011) (quoting In re von Bulow, 828 F.2d 94, 101 (2d Cir. 1987)); see also United States v. Treacy, No. S2 08 CR 366, 2009 WL

8

812033, *3 (S.D.N.Y. March 24, 2009) (subject-matter waiver of attorney-client privilege necessary "in order to prevent a selective and misleading presentation of evidence to the disadvantage of the adversary").

"[W]hether fairness requires disclosure . . . is best decided on a case by case basis, and depends primarily on the specific context in which the privilege is asserted." John Doe Co. v. United States, 350 F.3d 299, 302 (2d Cir. 2003) (second alteration in original) (internal quotation marks omitted); see also Bovis Lend Lease, LMB, Inc., No. 00 Civ. 9212, 2002 WL 31729693, at *13 ("'[F]airness concerns' govern the [] question of whether, by producing a portion of the document, [the disclosing party] has waived work product protection for other work product material on the same subject." (first alteration in original)).  While the defendants did voluntarily disclose certain information to the SEC -- providing the basis for the waiver of attorney-client privilege and work production protection -- there is no indication that they have sought to use this disclosure to their advantage in this and related litigation.  To the contrary, they resisted its production.  That I subsequently found that Weatherford had waived its protection as to material actually disclosed or explicitly referenced in disclosures does not alter this.  See Shinnecock Indian Nation, 652 F. Supp. 2d at 367 (finding no subject matter

waiver where defendants "consistently withheld opinion work product, thereby demonstrating their interest in upholding the privilege as to the most sensitive and protectible elements of work product, and [] disclosed all factual material"). The defendants consistently argued that the initial disclosures to the SEC were made under the belief that the "common interest" exception to work product waiver would apply. (Defendants' Opposition to Plaintiffs' Motion to Compel Documents Concerning the Audit Committee Investigation at 3; Nov. 5 Order at 17-18). The plaintiffs here have advanced no additional facts supporting subject matter waiver, nor have they shown that the defendants engaged in "selective, manipulative and strategic use of evidentiary privileges." Gruss v. Zwirn, No. 09 Civ. 6441, 2013 WL 3481350, at *11 (S.D.N.Y. July 10, 2013). While the plaintiffs highlight the depth and breadth of the Audit Committee investigation, leading to the "disclos[ure] [of] minute details and factual conclusions" to the SEC (Pl. Audit Memo. at 1), those very factual conclusions and details have already been produced pursuant to my previous orders in Dobina. This is not a case where Weatherford appears to be "pick[ing] and choos[ing] among [its] opponents, waiving the privilege for some and resurrecting the claim of confidentiality to obstruct others, or [] invok[ing] the privilege as to communications whose confidentiality [it] has already compromised for [its] own

10

benefit." In re Steinhardt Partners, LP, 9 F.3d 230, 235 (2d Cir. 1993).  The plaintiffs' motion is therefore denied.

    C. Latham Investigation

The plaintiffs seek to compel production of all documents withheld under attorney-client privilege and work product protection, with the exception of opinion work product, related to the Latham investigation.  They allege that Weatherford has waived protection by using the Latham investigation as both a sword and a shield and that the crime-fraud exception applies.[1]  (Pl. Latham Memo. at 2, 3-4).  The defendants argue that the plaintiffs are trying to re-litigate a foreclosed issue, citing my Dobina rulings that materials created in connection with the Latham investigation are protected work product whose protection was waived only to the extent that such materials were either actually disclosed or explicitly referenced to the SEC.  (Def. Latham Memo. at 1).

The same subject matter waiver analysis applied above to the Audit Committee investigation also largely applies to the Latham

---

[1] The plaintiffs also assert, in a single sentence, that they have a "substantial need" for this factual material, as it is "vital to understanding [the] Defendants' scienter in issuing the 2012 Financial Statements." (Pl. Latham Memo. at 4).  As noted in my November 5, 2013 order, arguments based on conclusory assertions devoid of further factual or legal argumentation will be deemed waived.  (Nov. 5 Order at 4 n.2 (citing Chevron Corp. v. Donziger, No. 11 Civ. 0691, 2013 WL 4045326, at *1 n.3 (S.D.N.Y. Aug. 9, 2013)).

11

investigation.  The plaintiffs also allege, however, that subject matter waiver is warranted because Weatherford placed the Latham investigation at issue by raising an affirmative defense of good faith, which they equate with an advice of counsel defense.  (Pl. Latham Memo. at 3).  The defendants argue that they "have never asserted that they relied on any communication with counsel -- much less the [Latham] Investigation work product -- regarding the lawfulness of their conduct." (Def. Latham Memo. at 2).  However, "a party need not explicitly rely upon advice of counsel to implicate privileged communications.  Instead, advice of counsel may be placed in issue where . . . a party's state of mind, such as his good faith belief in the lawfulness of his conduct, is relied upon in support of a claim."  Leviton Manufacturing Co. v. Greenberg Taurig LLP, No. 09 Civ. 8083, 2010 WL 4983183, at *3 (S.D.N.Y. Dec. 6, 2010).  However, while the defendants have pled good faith in their Answer, it is unclear whether they will ultimately present state of mind evidence warranting a waiver. See, e.g., MBIA Insurance Corp. v. Patriarch Partners VIII, LLC, No. 09 Civ. 3255, 2012 WL 2568972, at *7 (S.D.N.Y. July 3, 2012) (finding party waived privilege when it "demonstrated its intention to place the opinion of counsel at issue" in opposing motion for summary judgment); Arista Records, LLC v. Lime Group, LLC, No 06 Civ. 5936, 2011 WL 1642434, at *2-3 (S.D.N.Y. April 20, 2011)

(precluding party from offering evidence at damages stage of trial as to state of mind where party repeatedly invoked privilege to block inquiry into facts serving as basis for alleged good faith belief); see also United States v. Gasparik, 141 F. Supp. 2d 361, 371-72 (S.D.N.Y. 2001) (distinguishing waiver based on direct testimony of good faith, and finding no waiver where attorney raised good faith defense in opening statement, "but only in a very limited fashion"). At this stage, there is insufficient evidence to support subject matter waiver based on the defendants' initial assertion of good faith.

The crime-fraud exception also merits a closer look. The plaintiffs allege that when Latham told E&Y that its investigation had found no evidence of intentional misconduct -- which E&Y then relied upon to issue a clean audit -- both Latham and Weatherford knowingly perpetrated the fraud that is at the core of the case itself. Without the clean audit, Weatherford would not have been able to issue the financial statements that contained misrepresentations as to tax expenses. (Pl. Latham Memo. at 4).

"It is well-established that communications that otherwise would be protected by the attorney-client privilege or the attorney work product privilege are not protected if they relate to client communications in furtherance of contemplated or ongoing . . . fraudulent conduct." Chevron Corp. v. Donziger, No. 11 Civ. 691,

2013 WL 1087236, at *25 (S.D.N.Y. March 15, 2013); see also United States v. Jacobs, 117 F.3d 82, 87 (2d Cir. 1997) (applying crime-fraud exception to attorney-client communications), overruled on other grounds by Loughrin v. United States, __ U.S. __, __, 2014 WL 2807180 (2014); In re Richard Roe, Inc., 168 F.3d 69, 71-72 (2d Cir. 1999) (analyzing crime-fraud exception in relation to work product doctrine). "[T]he basis for the crime-fraud exception is not any diminished expectation of confidentiality, but rather the overarching public policy principle that a court will not enforce privilege where to do so would facilitate a crime." Madanes v. Madanes, 199 F.R.D. 135, 148 (S.D.N.Y. 2001) (citing United States v. Zolin, 491 U.S. 554, 562-63 (1989)). For the crime-fraud exception to apply, there must be "'probable cause to believe that a fraud or crime has been committed and that the communications in question were in furtherance of the crime or fraud.'" In re Omnicom Group, Inc. Securities Litigation, 233 F.R.D. 400, 404 (S.D.N.Y. 2006) (quoting Jacobs, 117 F.3d at 87). The burden of demonstrating probable cause rests on the party invoking the exception. Id. The party seeking to preserve the privilege, meanwhile, may offer "its own countervailing evidence." In re Omnicom Group, Inc. Securities Litigation, No. 02 Civ. 4483, 2007 WL 2376170, at *10 (S.D.N.Y. Aug. 10, 2007).

Probable cause may be found where "a prudent person ha[s] a

reasonable basis to suspect the perpetration or attempted perpetration of a . . . fraud." Chevron Corp., 2013 WL 1087236, at *25 (first alteration in original) (quoting In re Grand Jury Subpoena Duces Tecum Dated Sept. 15, 1983, 731 F.3d 1032, 1039 (2d Cir. 1984); In re Omnicom Group, 233 F.R.D. at 405.  The fraud at issue here is the same alleged fraud at the heart of the suit. This action has already survived a motion to dismiss based upon the heightened pleading standard imposed by Rule 9(b) of Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act of 1995; the Honorable Lewis A. Kaplan, U.S.D.J., found that the complaint "'state[d] with particularity facts giving rise to a strong inference'" that the defendant acted recklessly in making a materially false statement or omission of a material fact in connection with the purchase or sale of securities. Freedman, 2013 WL 5299137, at *4 (quoting 15 U.S.C. § 78u-4(b)(2)(A)).  Judge Kaplan concluded that "the inference that defendants issued financial statements in reckless disregard for their truth is at least as compelling as the inference that defendants repeatedly just got the results wrong." Id. at *6.

But in order for the exception to apply, the moving party must also establish probable cause that the disputed communications "were intended in some way to facilitate or to conceal the [fraudulent] activity." Jacobs, 117 F.3d at 88 (internal quotation

15

marks omitted); see also NXIVM Corp. v. O'Hara, 241 F.R.D. 109, 134 (N.D.N.Y. 2007) (finding exception inapplicable where moving party failed to demonstrate that "particular communication or document at issue" used in furtherance of contemplated or ongoing fraud). "It is not enough to show merely that privileged communications 'might provide evidence of a crime or fraud.'" Pure Power Boot Camp v. Warrior Fitness Boot Camp, 587 F. Supp. 2d 548, 565 (S.D.N.Y. 2008) (quoting In re Richard Roe, Inc., 168 F.3d at 71); see also Chevron Corp. v. Donziger, No. 11 Civ. 0691, 2013 WL 3805140, at *2 (S.D.N.Y. July 19, 2013); In re Fresh Del Monte Pineapple Antitrust Litigation, No. 04 MD 1628, 2007 WL 64189, at *3 (S.D.N.Y. Jan. 4, 2007), aff'd sub nom. American Banana Co. v. J. Bonafede Co., 407 F. App'x 520 (2d Cir. 2010). Rather, the communications must have been in furtherance of illegitimate conduct at issue. NXIVM Corp., 241 F.R.D. at 134.

   Here, the parties offer opposing views of the same evidence. Both rely on the deposition testimony of E&Y partner Darrel McKown, who stated that E&Y became aware in August 2012 that a Weatherford tax employee had acknowledged making "certain adjustments to the company's historical income tax calculations during the period 2007 through 2010 intentionally to achieve a targeted effective tax rate." (Deposition of Darrel McKown dated Aug. 20, 2013, attached as Exh. C to Pl. Latham Memo., at 11-12). The plaintiffs consider

this an admission of deliberate falsification of Weatherford's financial documents (Pl. Latham Memo. at 4); the defendants contend that the testimony does not establish either that Latham knew of any "intentional fraud" or that the Weatherford employee confessed to any fraud. (Def. Latham Memo. at 3-4).

The plaintiffs have failed to point to any particular communications that could reasonably be said to be in furtherance of any fraud. They seek "all factual materials that were the basis of the Latham Investigation," including documents related to "detailed interview debriefs" provided to E&Y. (Reply at 2). As an example, they seek summaries from interviews with the Weatherford employee who made the intentional manipulations to achieve a certain tax rate. (Reply at 2-3). However, such documents are not the type that facilitate or further fraudulent conduct; at most, they would potentially provide evidence of a fraud. This is insufficient to trigger the crime-fraud waiver. See NXIVM Corp., 241 F.R.D. at 133 (disallowing waiver where moving party "fail[ed] to show how [the communications at issue were] used or contemplated to be used to . . . perpetrate a fraudulent scheme"); Pure Power Boot Camp, 587 F. Supp. 2d at 565-66.

Conclusion

For the reasons discussed above, the plaintiffs' motions (Docket nos. 65, 66, and 67) are denied.

17

SO ORDERED.

*[signature: James C. Francis IV]*

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated: New York, New York
       July 25, 2014

Copies mailed this date:

Javier Bleichmar, Esq.
Wilson Meeks, Esq.
Labaton Sucharow, LLP
140 Broadway
New York, New York 10005

Peter A. Wald, Esq.
Jones Day
505 Montgomery Street, Suite 2000
San Francisco, CA 94111

Kevin H. Metz, Esq.
Jones Day
555 Eleventh St. NW, Suite 1000
Washington, DC 20004