UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------x
GLENN FREEDMAN, et al.,

                Plaintiffs,

        -against-                                        12 Civ. 2121 (LAK)

WEATHERFORD INTERNATIONAL LTD., et al.,

                Defendants.
------------------------------------------x

## MEMORANDUM WITH RESPECT TO ATTORNEYS' FEES AWARD

LEWIS A. KAPLAN, *District Judge.*

        Lead counsel[1] apply for $27,930,550.00 in attorneys' fees based on a lodestar said to have been $18,620,366.75 with a proposed multiplier of 1.5. The Court accepts the lodestar (for the purposes of this award), but concludes that a multiplier of 1.35 is more appropriate because it better represents the application of the *Goldberger* factors.[2] In particular, the Court is not persuaded that the risks in this case – "'perhaps the foremost' factor to be considered in determining whether to award an enhancement"[3] – merit a multiplier of 1.5.

---

[1] Lead counsel in this case are Labaton Sucharow LLP (appointed after lead plaintiff briefing, DI 31) and Bleichmar Fonti Tountas & Auld LLP (appointed co-lead counsel by Court order, DI 119).

[2] These factors include "'(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.'" *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 50 (2d Cir. 2000) (quoting *Union Carbide Corp. Consumer Prod. Bus. Sec. Litig.*, 724 F. Supp. 160, 163 (S.D.N.Y. 1989)) (alteration omitted).

[3] *Id.* at 54 (quoting *In re Agent Orange Prod. Liability Litig.*, 818 F.2d 226, 236 (2d Cir. 1987)).


2

*First*, plaintiffs and lead counsel benefitted from the fact that this litigation followed on the heels of *Dobina v. Weatherford International, Ltd.*,[4] a securities class action filed a year earlier against the same defendants based on some of the same allegedly fraudulent tax restatements.[5] In lead counsels' own words, "[t]his Action is closely related to the pre-existing securities class action filed against Weatherford on March 9, 2011."[6] Indeed, the motion to dismiss in *Dobina* was briefed fully and argued months before the initial complaint in this action was filed. Accordingly, although the scope of this lawsuit admittedly is broader than *Dobina*, some of the legwork parsing Weatherford's complicated tax issues and molding them into viable securities fraud arguments was done before this case was filed, creating a useful roadmap for lead counsel here and mitigating the risk that this case would be dismissed on the pleadings.

*Second*, the Court has reservations about lead counsels' argument that this case was particularly risky because there was a chance that the Supreme Court would overturn the fraud-on-the-market presumption during the pendency of this class action. To be sure, there was a chance that the Supreme Court would strike down the presumption in *Halliburton Co. v. Erica P. John Fund, Inc.*,[7] but that transient risk rose and fell while this case was in discovery. And the Second Circuit

---

[4] 11-cv-1646 (LAK) (S.D.N.Y.) ("*Dobina*").

[5] The class period in *Dobina* – which concerned the first of the three restatements at issue in this litigation – ended the day before the class period in this case began. As this Court noted previously, "[t]his case picks up where *Dobina* left off." *Freedman v. Weatherford Int'l Ltd.*, 2013 WL 5299137, at *1 (S.D.N.Y. Sept. 20, 2013).

[6] DI 202 at ¶ 19.

[7] 134 S. Ct. 2398 (2014).

3

has stated clearly that "litigation risk must be measured as of when the case is filed."[8] Indeed, the *Goldberger* court rejected an argument similar to the one propounded by lead counsel here. There, counsel argued that their Section 10(b) claims against two individual defendants based on aiding and abetting liability were particularly risky because, during the pendency of the litigation, the Supreme Court abolished Section 10(b) aiding and abetting liability in the *Central Bank* case.[9] The circuit court was "unpersuaded," however, because *Goldberger* was filed years earlier when "aiding and abetting liability was universally recognized in securities litigation."[10] Thus, the "risk" did not weigh in favor of a large fee award because "*Central Bank* simply could not, and indeed did not, pose a risk to recovery."[11] Here, similarly, the fraud-on-the-market presumption was recognized universally in securities litigation when counsel agreed to litigate this case on a contingency basis

---

[8] *Goldberger*, 209 F.3d at 55; *accord In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344, 351 (S.D.N.Y. 2014).

[9] *Goldberger*, 209 F.3d at 55 (referencing *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164 (1994)).

[10] *Id.*

[11] *Id.*

4

– and, unlike in *Goldberger*, it still was recognized universally when this case settled.[12] Thus, *Halliburton* "simply could not, and indeed did not, pose a risk to recovery."

At best, lead counsel gambled on the outcome of *Halliburton* and won. In some sense, therefore, counsel created "the risk of non-recovery"[13] they identify in their papers because they likely could have settled this case before *Halliburton* was decided, albeit for a lesser amount.[14] Indeed, that is exactly what lead counsel did in *Dobina* when that case settled in January 2014.[15] That is not to say that counsel here should be punished for their "willingness to press full-steam ahead" in the face of *Halliburton*, which turned out to be the right call. To the contrary, lead counsel should be commended and rewarded. But it is this Court's job to determine what that reward should be, mindful of the fact that a larger reward for attorneys means a smaller recovery for class members. Here, counsel have accumulated a substantially higher lodestar (which the Court has accepted) than they would have had they settled pre-*Halliburton*, and they are being rewarded also

---

[12] This case was filed on March 22, 2012 [DI 1]. The Supreme Court granted *certiorari* in *Halliburton* on November 15, 2013, 134 S. Ct. 636 (Mem), and issued its opinion on June 23, 2014, 134 S. Ct. 2398. The parties agreed in principle to settle this case on June 3, 2015 [DI 187].

This argument about litigation risk applies with equal force to lead counsels' claim that "*Omnicare* created substantial risk on the element of falsity at summary judgment and trial." DI 201 at 19; DI 202 at 42-44. The Supreme Court's decision in *Omnicare, Inc. v. Laborers District Council Construction Industry Pension Fund*, 135 S. Ct. 1318 (2015), like its decision in *Halliburton*, was issued years after this case was filed.

[13] DI 201 at 4.

[14] *See* DI 202 at ¶ 209-10 (noting that many securities class actions were stayed or settled after the Supreme Court granted *certiorari* in *Halliburton* in November 2013).

[15] *Id.* at ¶ 209; *see* 11-cv-1646 (LAK), DI 239, 240.

with a lodestar multiplier of 1.35. By contrast, this Court reduced counsels' lodestar by approximately 25 percent in *Dobina* and applied a multiplier of 1.0.[16]

The Court has considered also the requested fee award as a percentage of the $120 million settlement fund.[17] The requested fee award would correspond to approximately 23.3 percent of the settlement fund.[18] Recognizing that lead counsel did a good job litigating this case, that number nonetheless strikes this Court as too large for a settlement of this size.[19] The adjusted fee award is equivalent to approximately 20.9 percent of the settlement fund, which the Court believes is more appropriate in this case.[20]

---

[16] *See In re Weatherford Int'l Sec. Litig.*, 2015 WL 127847, at *2 (S.D.N.Y. Jan. 5, 2015) (Kaplan, J.).

[17] *See McDaniel v. Cnty. of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010) ("[I]t remains the law in this Circuit that courts may award attorneys' fees in common funds cases under either the lodestar method or the percentage of the fund method.") (quotation marks omitted).

[18] DI 201 at 24.

[19] *See In re IndyMac Mortg.-Backed Sec. Litig.*, 94 F. Supp. 517, 523 (S.D.N.Y. 2015) (noting that, according to a recent report, the median court-approved fee award in securities cases with recoveries between $100 million and $500 million in the period from 2011 to 2013 was 20 percent of the settlement fund).

[20] For reference, the final fee award in *Dobina* was equivalent to 18.0 percent of the settlement.

6

Accordingly, lead counsel will be awarded $25,137,495.00 in attorneys' fees, representing a multiplier of 1.35 applied to the lodestar submitted by counsel. The Court approves also lead counsels' request for reimbursement of $4,675,424.65 in litigation expenses. Further, for the reasons stated during the fairness hearing held on November 3, 2015, the request for service awards for the class representatives is denied.

SO ORDERED.

Dated:     November 23, 2015

_____
Lewis A. Kaplan
United States District Judge